# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2023-3371

_____

BAM TRADING SERVICES, INC.,
d/b/a Binance.US,

    Petitioner,

    v.

STATE OF FLORIDA, OFFICE OF
FINANCIAL REGULATION,

    Respondent.

_____

On Appeal from the Office of Financial Regulation.
Russell C. Weigel, III, Commissioner.

May 22, 2024

B.L. THOMAS, J.

Petitioner seeks review of an Emergency Suspension Order (ESO) on the grounds that it is facially deficient under section 120.60(6), Florida Statutes, and should therefore be quashed. We agree.

*Facts*

Petitioner is a Florida-based digital assets company doing business as Binance.US, under a money-services business license supervised by the Office of Financial Regulation (OFR). Binance Holdings Limited (Binance Holdings) is an affiliate company of Petitioner doing business as Binance.com. Changpeng Zhao (Zhao) is the former CEO of Binance Holdings. Zhao has held an indirect

ownership stake in Petitioner since 2019 and was Petitioner's Chairman of the Board of Directors.

In November 2023, Zhao and Binance Holdings entered federal plea agreements for not implementing Anti-Money Laundering (AML) and Bank Secrecy Act compliance programs. Later, Zhao stepped down as Petitioner's Chairman of the Board of Directors and relinquished his voting rights in Petitioner through a proxy arrangement.

On November 29, 2023, following the plea deals involving Zhao and Binance Holdings, OFR issued the emergency suspension order (ESO) on review. The order suspended Petitioner's money-services business license and directed Petitioner to cease and desist from engaging in money transmission activity. It asserted that under section 560.114(2)(c), Florida Statutes, an immediate serious danger to the public health, safety, and welfare exists whenever "a natural person who is required to be listed on a licensee's application for a money services business license pursuant to section 560.141(1)(a)3., is criminally charged with, or arrested for, among other things, a crime described in section[] 560.114(1)(o), Florida Statutes."

The order made factual findings that Zhao was Petitioner's "Controlling Shareholder," an indirect owner, and a control person of Petitioner "whose name must be listed on its license application," as well as CEO of Binance Holdings. It found that Zhao was criminally charged with violating the Bank Secrecy Act by willfully causing Binance Holdings to fail to maintain and implement an effective AML program in violation of 31 U.S.C. §§ 5318(h) and 5322(b), (c), and (e) and 31 C.F.R. § 1022.210 during the timeframe between August 2017 and October 2022. Zhao admitted in his plea agreement that as founder and CEO he willfully evaded the requirements in the Bank Secrecy Act regarding registration and the AML, prioritizing growth and profits over compliance with U.S. law. He advised staff that it was "better to ask for forgiveness than permission" in what he described as a "grey zone," and he believed that compliance would have interfered with gaining market share and increasing profits. The order also found that Zhao had been charged under federal law with a crime involving fraud, moral turpitude, or dishonest

2

dealing, falling within the category of offense described in section 560.114(1)(o), Florida Statutes.

The order then includes a conclusion of law that Zhao's conduct constituted grounds for suspending Petitioner's license under section 560.114(1)(o). The order also concluded that because the conduct occurred on an ongoing basis during the licensed operation of Petitioner, the continued operation of Petitioner constituted an immediate danger to the public health, safety, and welfare necessitating an emergency suspension.

*Jurisdiction*

The Court has "the power of direct review of administrative action, as prescribed by general law." Art. V, § 4(b)(2), Fla. Const. By general law, the Legislature has authorized this court to review "a preliminary, procedural, or intermediate order of [an] agency if review of the final agency decision would not provide an adequate remedy." § 120.68(1)(b), Fla. Stat. (2023). Review of agency orders suspending a license purported under the authority of section 120.60(6), Florida Statutes, is by "petition for review." *See* Fla. R. App. P. 9.190(b)(2); 9.100(c)(3). Further, section 120.60(6)(c), Florida Statutes states that "[t]he agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable."

*Standard of Review*

We respectfully decline to apply the "scope of review" of non-final agency action as defined in *State v. Murciano*, 163 So. 3d 662, 664–65 (Fla. 1st DCA 2015), because that definition is not grounded in or authorized by section 120.68(7), Florida Statutes, which specifically defines our authority in such cases:

> The court shall remand a case to the agency for further proceedings consistent with the court's decision *or set aside agency action*, as appropriate, when it finds that:
>
> . . . .

3

(c)     The *fairness* of the proceedings or the correctness of the action may have been impaired *by a material error in procedure* or a failure to follow prescribed procedure;

(d)     The agency has *erroneously interpreted a provision of law* and a correct interpretation compels a particular action[.]

§ 120.68(7), Fla. Stat. (emphasis added).

We note that in *Murciano,* this Court stated that the "scope of review" of non-final agency action was "'no broader than the right of review by common law certiorari.'" 163 So. 3d at 664 (quoting *CNL Resort Hotel, L.P. v. City of Doral,* 991 So. 2d 417, 420 (3d DCA 2008) (quoting *Fla. Dept. of Financial Servs. v. Fugett,* 946 So. 2d 80, 81 (Fla. 1st DCA 2006)). Respectfully, this is an incorrect statement of law, which has its origin in a prior decision of this Court in *Charlotte County v. General Development Utilities, Inc.,* 653 So. 2d 1081 (Fla. 1st DCA 1995), where this Court relied on this proposition from a committee note:

Our review of the PSC order here at issue is pursuant to section 120.68(1), Florida Statutes, which provides in part:

(1) A party who is adversely affected by final agency action is entitled to judicial review . . . . A preliminary, procedural, or intermediate agency action or ruling, including any order of a hearing officer, is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

The Committee Notes to Florida Rule of Appellate Procedure 9.100(c),[2] *explain* that the statutory authority to review non-final administrative action is analogous to and no broader than the right of review by common law writ of certiorari.

653 So. 2d at 1084 (emphasis added).

4

The decision in *Charlotte County* further stated in footnote two that:

> The Committee Notes to rule 9.100(c) state:
>
>> It was the opinion of the Advisory Committee that such a right of review is guaranteed by the statute and is not dependent on a court rule, since Article V, Section 4(b)(2) of the Florida Constitution provides for legislative grants of jurisdiction to the district courts to review administrative action without regard to the finality of that action. *The Advisory Committee was also of the view that the right of review guaranteed by the statute is no broader than the generally available common law writ of certiorari, although the statutory remedy would prevent resort to an extraordinary writ.*

653 So. 2d at 1084, n.2 (emphasis added).

This committee note cannot be authority to narrow this Court's standard of review granted by the organic and general law, as that committee note itself seemed to recognize. We cannot and will not rely on this incorrect proposition to require a party challenging "a preliminary, procedural, or intermediate order of [an] agency if review of the final agency decision would not provide an adequate remedy." § 120.68(1)(b) Fla. Stat. (2023). And where the Legislature has directed this court to review specific components of the administrative non-final action addressing "fairness . . . material error . . . [or where the administrative authority has] erroneously interpreted a provision of law and a correct interpretation compels a particular action." § 120.68(7), Fla. Stat. (2023). Furthermore, neither the constitution nor the Legislature equated our review to the demanding standard applicable to common law certiorari review as noted above. In addition, in section 120.60(6), the Legislature provided that such orders are subject to "judicial review" as we discuss in more detail below. Where the organic law authorizes the Legislature to define our jurisdiction and review of non-final agency action, respectfully, we are not at liberty to disregard those binding definitions based

5

on prior erroneous judicial decisions inconsistent with applicable organic and general law.

## *Analysis*

The ESO contains a material error in procedure and an erroneous interpretation of sections 560.114(2) and 120.60(6), Florida Statutes.

Section 560.114(2) states:

> Pursuant to s. 120.60(6), the office *may* summarily suspend the license of a money services business if the office finds that a licensee poses an immediate, serious danger to the public health, safety, and welfare. A proceeding in which the office seeks the issuance of a final order for the summary suspension of a licensee shall be conducted by the commissioner of the office, or his or her designee, who shall issue such order. The following acts are deemed to constitute an immediate and serious danger to the public health, safety, and welfare, and the office may immediately suspend the license of a money services business if:
>
> . . . .
>
> c) A natural person required to be listed on the license application for a money services business pursuant to s. 560.141(1)(a)3. is criminally charged with, or arrested for, a crime described in paragraph (1)(o), paragraph (1)(p), or paragraph(1)(q).

Section 560.114(1) states:

> The following actions by a money services business, authorized vendor, or affiliated party constitute grounds for the issuance of a cease and desist order; the issuance of a removal order; the denial, suspension, or revocation of a license; or taking any other action within the authority of the office pursuant to this chapter:
>
> . . . .

(o) Having been convicted of, or entered a plea of guilty or nolo contendere to, any felony or crime punishable by imprisonment of 1 year or more under the law of any state or the United States which involves fraud, moral turpitude, or dishonest dealing, regardless of adjudication.

Section 120.60(6) states:

If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency *may* take such action by any procedure that is *fair under the circumstances* if:

. . . .

(c) The agency states in *writing* at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and *its reasons for concluding that the procedure used is fair under the circumstances*. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered, but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.

(emphasis added).

Here, the ESO did not state the specific reasons for concluding that the procedures it used were fair under the circumstances. Rather, it relied on section 560.114(2) as authorizing OFR to suspend the license. However, the statute itself says the agency needs to provide reasons and only that the agency *may* suspend the license. *See* § 120.60(6), Fla. Stat. The usage of "may" in the statute implies discretion, rather than obligation. Additional reasoning beyond mere reference to the statute is necessary to suspend the license, given the property interest at stake here and potential harm discussed below.

The ESO further fails to discuss alternative remedies or why less-harsh remedies would be insufficient to address the purported emergency. It offers no explanation why a less-drastic measure to license suspension and complete termination of Petitioner's business in Florida are insufficient to stop the alleged harm. Indeed, the ESO fails to address, or even acknowledge, that the potential harm here from the ESO is significant. Suspending Petitioner's license threatens significant financial losses to more than 170,000 accounts in Florida. Unlike most traditional money transmitters, Petitioner holds both fiat and digital assets on behalf of its Florida customers. For Petitioner to immediately comply with the ESO, it would be necessary to liquidate the digital asset holdings of every customer. A forced and untimely sale of Florida customers' digital assets threatens financial harm because of digital asset price fluctuations. In addition, an account holder who is forced to sell a digital asset at a price higher than a cost basis would incur unplanned and extensive tax liabilities. To comply with the requirements of section 120.60(6)(c) highlighted above, OFR needed to state why the drastic and disruptive measure of an ESO was "fair under the circumstances." It did not do so, and we must set the ESO aside. *See* § 120.68(7)(c), Fla. Stat.

SET ASIDE.

TANENBAUM, J., concurs; LEWIS, J., concurs in result only without opinion.

––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––

M. Drew Parker, Radey Law Firm, Tallahassee, for Petitioner.

William H. Stafford III and Emily J. Witthoeft, Department of Legal Affairs, Tallahassee; and Brandon M. Greenberg and Melinda H. Butler, Office of Financial Regulation, Tallahassee, for Respondent.